IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH LEE JONES,

      Plaintiff,

      v.                             CASE NO. 25-2175-JWL

DOUGLAS COUNTY BOARD OF
COMMISSIONERS, et al.,

      Defendants.

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Joseph Lee Jones is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

## I.  Nature of the Matter before the Court

Plaintiff filed this action on September 30, 2024, in the District Court of Douglas County, Kansas, as a "Petition for Damages and Restraining Order." (Doc. 1–1, at 1.) The matter was removed to this Court on April 4, 2025, pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1.) Plaintiff is in custody at the Douglas County Jail in Lawrence, Kansas ("DCJ").

Defendants filed a Motion to Dismiss (Docs. 3, 4) on April 7, 2025. Plaintiff has filed responses (Docs. 11, 12, 15) to the motion to dismiss, as well as: a Motion to Appoint Counsel (Doc. 5); Motion for Court Order (Doc. 6); Motion for Status Conference and Case Management (Doc. 7); Motion for Temporary Injunctive Relief (Doc. 8); Objections (Doc. 9); Supplement (Doc. 10); a Motion to Amend (Doc. 13); and a Notice of Additional Information (Doc. 16).

Plaintiff's original complaint filed in state court is titled "Petition for Damages and Restraining Order." (Doc. 1–1, at 1.) The complaint is confusing, but asks the court for a

temporary injunction removing Lt. Reiling[1] from the DCJ.  Plaintiff alleges that he previously filed

a federal court case on Reiling—Case No. 20-3068-SAC.  Plaintiff then argues that the "delay in

refiling is timely," mentioning a stay due to Covid-19.  *Id*.  Plaintiff alleges that he is due money

damages "for the civil rights pled lost in the Federal filed complain[t] and other damages in that

complaint dismissed with-out prejudice due to inability to pay the file [sic]fee."  *Id*.

## II. Motion to Amend Complaint

Plaintiff has filed a motion (Doc. 13) seeking to amend his complaint.  Plaintiff attaches

his proposed amended complaint that is on this Court's approved form for filing an action under

42 U.S.C. § 1983.  (Doc. 13–1.)  The Court will grant Plaintiff leave to file his proposed amended

complaint and will direct the Clerk to file Doc. 13–1 as Plaintiff's Amended Complaint.  *See* Fed.

R. Civ. P. 15(a)(1)(B).

The Amended Complaint supersedes the original complaint, rendering moot the motion to

dismiss.  Therefore, the Court denies as moot Defendants' Motion to Dismiss.  *See Carefree/Scott

Fetzer Co. v. Lippert Components, Inc.*, 2012 WL 2412044, at *3 (D. Colo. 2012) (noting that

although one party took issue with the other party's tack of proposing amendments that would

render its motion to dismiss moot, "the most common use of Rule 15(a) is by a party seeking to

amend in order to cure a defective pleading") (citations omitted).  However, Plaintiff's Amended

Complaint is subject to statutory screening.

Plaintiff alleges as Count I of his Amended Complaint that Reiling's failure to properly

clean the back of the cell door constitutes cruel and unusual punishment in violation of the Eighth

Amendment.  (Doc. 13–1, at 5.)  Plaintiff alleges that Reiling was made aware of feces on the back

of Plaintiff's cell door.  *Id*.  Plaintiff alleges that he became ill because of the nasty cell.  *Id*.

---

[1] Plaintiff refers to the defendant as Lt. Rieling.  However, the motion to dismiss clarifies that that the party's surname
is Reiling.  *See* Defendants' Motion to Dismiss (Doc. 3).

Plaintiff alleges that he made complaints, and staff told him that it was his responsibility to clean his cell.  *Id.*

As Count II, Plaintiff reasserts his original claim that Reiling created a hostile environment in violation of the Eighth Amendment.  *Id.*  He bases this claim on Reiling's statements from 2020 that were the subject of his prior case.  Plaintiff alleges that the jail should create a confidential system to report issues anonymously.  *Id.*

As Count III, Plaintiff alleges a First Amendment violation based on court access.  *Id.* at 7.  Plaintiff also bases this claim on his alleged issues with Reiling in 2020.  *Id.* ("outgoing legal mail issues started with Reiling in January 2020").  Plaintiff alleges that there is a delay in outgoing mail and that the jail should be proactive and move to an e-file system.  *Id.*

As Count IV, Plaintiff alleges a due process violation.  *Id.* at 8.  Plaintiff alleges that some unidentified jail policies "prevents knowingly the ability to file writs of habeas have been corrupted by Douglas County Court Staff."  *Id.*

As Count V, Plaintiff alleges cruel and unusual punishment due to Lt. Carlson's refusal to repaint and power wash "poopy cells in Bravo Unit, and seal up cracks (bugs mites) come in from." *Id.* at 10.  Plaintiff alleges that jail staff responsible for "poop removal" always forget the backs of the doors.  *Id.*  Plaintiff also alleges that he was left in a cell for four days with an unflushed "poopy toilet."  *Id.*  Plaintiff alleges that the Bravo Unit houses mentally ill inmates who should not have to clean their own cells, and that a hazmat crew should be created to clean the cells.  *Id.*

As Count VI,  he alleges a violation of his First Amendment right to practice his religion and a due process violation.  *Id.* at 4.  He alleges that Bravo Behavioral Management ("BMU") forbids computer tablets while on BMU.  *Id.*  Plaintiff alleges that access to his Christian Transhumanist Association ("CTA") email account is only on the tablet.  *Id.*  He alleges that he is

a "Christian Transhumanist" and is "forced to communicate with only Basic Christians about the development of an intelligence amplifier (a microtubule crystal braincell), his own original A.I. design." *Id*. at 6.  Plaintiff claims that his emails were hacked and he reported it to the CTA, who were emailing him until his emails "were harmed." *Id*.

The remainder of his allegations are largely incomprehensible.  He mentions a proposal for a "SpaceForce Chaplin," a "transhumanist practice," and states that his activities are "internationally emergent." *Id*. at 4.  He states that "sub-casted inmates (vetted) are to have their needs met since the law library say [sic] I (transhuman) call the shots." *Id*.  He mentions the "forced utilization of [his] services as an independent auditor)." *Id*.

Plaintiff names as defendants: the Douglas County Board of Commissioners; Jay Armbrister, and Chase Reiling.  Plaintiff seeks compensatory, punitive, and nominal damages.

## III.  Statutory Screening of Prisoner Complaints

Plaintiff filed this action in state court, and Defendants removed the action to this Court. Although Plaintiff is a three-strikes litigant under 28 U.S.C. § 1915(g), the statute "does not prevent an indigent prisoner-plaintiff with three strikes from proceeding in a case that someone else filed in federal court." *Woodson v. McCollum*, 875 F.3d 1304, 1307 (10th Cir. 2017) (citation omitted).

However, because Plaintiff is a prisoner and his Amended Complaint seeks redress from a governmental entity or officer or employee of a governmental entity, it is subject to screening under 28 U.S.C. § 1915A.  *See* 28 U.S.C. § 1915A(a) ("The Court shall review . . . as soon as practical after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."); *see also Crosby v. U.S. Attorney's Office*, 2020 WL 1271825, at *3 (D. Kan. 2020) (screening amended complaint after

removal from state court); *King v. Hill*, 2022 WL 1185124, at *3 (S.D. Ill. 2022) (finding that claims properly removed to the federal court were subject to screening under Section 1915A); *Biron v. Carvajal*, 2021 WL 3047250, at *35 (D. Minn. 2021) (stating that "the Court agrees with Defendants that cases removed from state court are subject to screening under § 1915A" and "courts in this District have done so"); *Johnson v. Bedwell*, 2017 WL 4539918, at *1 (S.D. Ind. 2017) ("Although the filing fee was paid at the time this action was removed to this Court, this action is still subject to screening under 28 U.S.C. § 1915A.").

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## IV. DISCUSSION

### 1. Statute of Limitations – Counts II and III

As Count II, Plaintiff reasserts his original claim that Reiling created a hostile environment in violation of the Eighth Amendment. *Id*. He bases this claim on Reiling's statements in 2020. As Count III, Plaintiff alleges a First Amendment violation based on court access. Plaintiff also bases this claim on his alleged issues with Reiling in 2020.

The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006). Plaintiff does not allege that he was unaware of the facts supporting his causes of action when they occurred in 2020.

A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations.  *Id*. at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).  "While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Cash v. City of Durant*, 2024 WL 1573947, at *3 (10th Cir. 2024) (unpublished) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

It plainly appears from the face of the Amended Complaint that Plaintiff's claims are subject to dismissal as barred by the applicable two-year statute of limitations.  Plaintiff filed his original action on March 4, 2020, based on events occurring in January 2020.  *See Jones v. Reiling*, Case No. 20-3068, at Doc. 1 (D. Kan.).   Plaintiff refers to the instant case as a "delayed refiling." (Doc. 1–1.)  Plaintiff initiated the instant case on September 30, 2024.  It thus appears that any events or acts of Defendant Reiling taken in connection with Plaintiff's claims took place more than two years prior to the filing of Plaintiff's complaint and are time-barred.  *See Fratus v. Deland*, 49 F.3d 673, 674–75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).

Plaintiff argues that he is entitled to tolling based on Covid-19, exhaustion, and mental incompetency.  Although the Kansas Supreme Court tolled the state statutes of limitations in response to the COVID-19 pandemic, it does not save Plaintiff's claims in this case.  *See Korgan v. Estate of Hansen by and through Cramer*, 2022 WL 4465074, at *2–4 (D. Kan. Sept. 26, 2022) (finding that the statute of limitations was tolled from March 19, 2020 through April 14, 2021).

The tolling or suspension is set forth in Kansas Supreme Court ("KSC") Administrative Order 2020-PR-016, as amended by KSC Administrative Order 2020-PR-32. KSC Administrative Order 2021-PR-020 reinstated the statute of limitations effective April 15, 2021, and instructs that "for a deadline or time limitation that did not begin to run'" because of the earlier suspension, "'a person shall have the full period provided by law to comply with the deadline or time limitation.'" *See id.* The AO reinstated the statute of limitations effective April 15, 2021. Even if the statute had not run prior to the tolling, Plaintiff would have had two years from April 15, 2021, to initiate his case. Even considering the KSC's suspension or tolling, Plaintiff's claims are still untimely.

Plaintiff suggests that tolling should apply due to exhaustion, without explanation. Plaintiff was required to exhaust prior to filing his initial case in March 2020, so any time exhausting would not help him in this case.

Kansas also recognizes the doctrine of equitable tolling but seems to apply it only where defendants did "something that amounted to an affirmative inducement to plaintiff to delay bringing the action." *Friends University v. W.R. Grace & Co.,* 608 P.2d 936, 941 (Kan. 1980) (quoting *Rex v. Warner,* 332 P.2d 572 (Kan. 1958)). The Kansas Court of Appeals has suggested in unpublished decisions that the two-year statute of limitations period can be equitably tolled if a plaintiff "has been pursuing his or her rights diligently and some 'extraordinary circumstance stood in [the] way and prevented timely filing.'" *Caballero v. Wyandotte Cty. Sheriff's Dep't*, 789 F. App'x 684, 686 (10th Cir. 2019) (unpublished) (citing *McClain v. Roberts*, —— Kan.App. ——, 304 P.3d 364, 2013 WL 3970215, at *3 (Kan. Ct. App. Aug. 2, 2013) (unpublished) (alteration in *McClain*) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 391, 133 S. Ct. 1924, 185 L.Ed.2d 1019 (2013)); *see also Harris v. Neill*, —— Kan.App. ——, 216 P.3d 191, 2009 WL 3082642, at *6 (Kan. Ct. App. Sept. 25, 2009) (unpublished)).

The record fails to support a claim that Defendants affirmatively induced Plaintiff into delaying his filing of this suit. Plaintiff has not shown that Defendants affirmatively induced him into delaying his filing of this § 1983 action or that despite pursuing his rights diligently, some "extraordinary circumstances" prevented the timely filing. *Dartez v. Peters*, Case No. 15-3255-EFM-DJW, 2018 WL 1138282, at *6 (D. Kan. March 2, 2018) (citation omitted). Neither pro se status nor a misunderstanding of law and legal procedure are sufficient to establish extraordinary circumstances. "[I]t is well established that ignorance of the law, even for an incarcerated pro se [plaintiff], generally does not excuse prompt filing." *Caballero*, 789 F. App'x at 687 (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (internal quotation marks omitted); *see also McClain*, 2013 WL 3970215, at *3 ("[I]gnorance of the law doesn't entitle a person to equitable tolling of the limitations period.")). Plaintiff does not demonstrate any extraordinary circumstance that would entitle him to equitable tolling of the limitation period.

Plaintiff also suggests that the limitations period should be tolled due to "mental incompetency and boughts [sic] of cognitive decline." (Doc. 13.) Kansas statutes set forth tolling for persons under legal disability. K.S.A. § 60-515(a) provides that:

> (a) *Effect.* Except as provided in K.S.A. 60-523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.
>
> Notwithstanding the foregoing provision, if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability.

K.S.A. 60-515(a).

Plaintiff does not provide factual support for his claim that the statute of limitations should be tolled based on "mental incompetency and boughts [sic] of cognitive decline." *See Eden v. Webb*, 2022 WL 621317, at *2 (D. Kan. 2022) ("The problem with Plaintiff's tolling argument is that his allegations do not demonstrate that he was legally incapacitated."). The Court in *Eden* found that the Kansas Legislature has provided that in construing Kansas statutes:

> 'Incapacitated person' means an individual whose ability to receive and evaluate relevant information, or to effectively communicate decisions, or both, even with the use of assistive technologies or other supports, is impaired to the degree that the person lacks the capacity to manage the person's estate, or to meet essential needs for the person's physical health, safety or welfare, as defined in K.S.A. 2002 Supp. 59–3051, and amendments thereto, whether or not a guardian or a conservator has been appointed for that person.

*Id*. (citing K.S.A. § 77-201)[2]. The Court went on to find that:

> Plaintiff offers no evidence that he was impaired to the degree that he could not manage his own affairs or was not capable of meeting his essential needs. Plaintiff claims he suffered memory loss and a brain injury. These allegations are insufficient to establish that Plaintiff was incompetent at any time following his injury, let alone that he was incompetent for the approximately two years between his arrest and his viewing of the body camera footage. *See Farhat v. Bd. of Cty. Comm'rs of Stephens Cty.*, No. CIV-06-468-R, 2008 WL 441684, at *4 (W.D. Okla. Feb. 14, 2008) (finding plaintiff's allegations of short-term memory loss and brain injury were insufficient to establish incompetence such that statute of limitations should be tolled). *See also Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (the plaintiff has the burden of establishing a factual basis for tolling the statute of limitations); *Slayden v. Sixta,* 825 P.2d 119, 122 (Kan. 1992).

*Id*. at *3.

Plaintiff has not shown that his bouts with cognitive decline warrant tolling based on

---

[2] It appears that parts of this statute were amended by 2025 Kansas Laws Ch. 40 (H.B. 2359). It appears that the only change to the cited language is the substitution of "section 25" for K.S.A. 59-3051 in the cited paragraph.

incompetency.  Plaintiff bears the burden of establishing a factual basis for tolling.  Plaintiff was able to file the 2020 case, the instant case, as well as 19 other cases that he filed around and in between those two cases.[3]  Any bouts of cognitive decline during that period did not prevent him from filing 21 cases during that timeframe.   Plaintiff should show good cause why his claims in Count II are not subject to dismissal as barred by the statute of limitations.

## 2.  Failure to State a Claim

### A.  Count I

Plaintiff alleges as Count I of his Amended Complaint that Reiling's failure to properly clean the back of the cell door constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Plaintiff alleges that Reiling was made aware of feces on the back of Plaintiff's cell door.  Plaintiff alleges that he became ill because of the nasty cell, and that he made a complaint and staff told him that it was his responsibility to clean his cell.

Plaintiff brought this same claim in one of his prior cases.  *See Jones v. Armbrister*, Case No. 24-3209-JWL, Doc. 7 (D. Kan.).  In that case, he claimed that Lt. Carlson is the one that stated that the cells were clean, but failed to check them herself.  *Id*. at Doc. 7, at 3.  Plaintiff stated that after he made several complaints, they attempted to clean one door, and the other two cells were

---

[3] *See Jones v. Douglas Cty. Jail*, Case No. 20-3056-SAC (D. Kan. filed 2/18/20); *Jones v. Armbrister*, Case No. 24-3156-JWL (D. Kan. filed 9/10/24); *Jones v. Armbrister*, Case No. 24-3172-JWL (D. Kan. filed 9/30/24); *Jones v. Armbrister*, Case No. 24-3216-JWL (D. Kan. filed 12/2/24); *Jones v. Douglas Cty, Bd. of Comm'rs*, Case No. 20-2363-SAC (D. Kan. removed on 7/24/20); *Jones v. Douglas Cty. Sheriff's Office*, Case No. 20-2520-SAC (D. Kan. removed on 10/21/20); *Jones v. Douglas Cty. Sheriff's Office*, Case No. 20-2522-SAC (D. Kan. removed 10/21/20); *Jones v. Loomis*, Case No. 20-3020-SAC (D. Kan. filed 1/15/2020); *Jones v. Douglas Cty. Bd. of Cty. Comm'rs*, Case No. 20-3064-SAC (D. Kan. filed 2/25/2020); *Jones v. Douglas Cty. Jail*, Case No. 20-3091-SAC (D. Kan. filed 3/25/20); *Jones v. Crow*, Case No. 20-3177-HLT (D. Kan. filed 7/01/20); *Jones v. Bureau of Prisons*, Case No. 21-3058-SAC (D. Kan. filed 2/26/21); *Jones v. Patents and Trademarks Comm'r*, Case No. 21-4021-KHV-ADM (D. Kan. filed 4/8/21); *Jones v. Cole*, Case No. 24-3147-JWL (D. Kan. filed 8/26/24); *Jones v. (lnu)*, Case No. 24-3158-JWL (D. Kan. filed 9/12/24); *Jones v. Armbrister*, 24-3209-JWL (D. Kan. filed 11/20/24); *Jones v. United States Patent and Trademark Office*, Case No. 25-3070-JWL (D. Kan. filed 4/21/25); *Jones v. Google LLC*, Case No. 20-3072-SAC (D. Kan. filed 3/6/20); *Jones v. Comm'r of  Social Security Adm.*, Case No. 20-4008-JAR (D. Kan. filed 1/27/20); *Jones v. Comm'r of Social Security Admin.*, Case No. 20-4023-JWB (D. Kan. filed 5/7/20); and *Jones v. Comm'r Social Security Admin.*, Case No. 20-4031-JWL (D. Kan. filed 3/31/25)

cleaned after two weeks.  *Id.* at 3–4.  Plaintiff claimed that he was stuck in a cell with "poop all over the door for 2 weeks."  *Id.* at 4.

Plaintiff has failed to state a claim based on the conditions of his cell.  A delay by staff in cleaning his cell or them requiring him to clean his own cell does not show deliberate indifference or a sufficiently serious condition.  A prison official violates the Eighth Amendment when two requirements are met.[4]  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id.*  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

---

[4] The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims."  *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id*.  It is not enough to establish that the official should have known of the risk of harm.  *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id*.  As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases.  Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration."  *Id*. (citations omitted).

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  Plaintiff has also failed to allege deliberate indifference by any defendant. Nothing suggests that staff are deliberately indifferent by providing cleaning supplies to inmates to allow them to clean their own cells.  *See Dykes v. Benson*, 2022 WL 19076614, at *6 (6th Cir. 2022) (finding no Eighth

Amendment violation where Dykes was placed in a filthy cell and was provided with cleaning supplies three days later, stating that "temporary exposure to unsanitary conditions does not amount to an Eighth Amendment violation") (citation omitted); *see also Schmitt v. United States*, 2018 WL 4102517, at *4 (S.D. Miss. 2018) (noting situations where courts have concluded that inmates failed to state a constitutional claim based on filthy and/or flooded cells) (citing *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998) (no constitutional violation where prisoner alleged he was housed for three days in a filthy cell and was provided cleaning supplies); *Smith v. Copeland*, 87 F.3d 265, 268–69 (8th Cir. 1996) (prisoner housed for four days in cell with raw sewage from overflowing toilet failed to state Eighth Amendment claim); *Geagan v. Couvillon*, 2018 WL 1750954, at *4 (W.D. La. Mar. 22, 2018) (no violation where prisoner complained of two incidents where toilet overflowed causing feces, urine, and other foreign objects to flood the tier); *Compare McCord v. Maggio*, 927 F.2d 844, 846 (5th Cir. 1991) (inmate repeatedly having to sleep and live in raw sewage and foul water constituted cruel and unusual punishment)).

Plaintiff's claims in his previous case suggest that Plaintiff's situation was temporary— two weeks or less. Although Plaintiff does not want to clean his own cell and would prefer to have staff power wash the cell, he has failed to show deliberate indifference. *See Waterman v. Cherokee Cty. Jail*, 2018 WL 3609751, at *2 (D. Kan. 2018) ("plaintiff does not have a constitutional right to a particular amount or type of cleaning supplies, such as gloves) (citing *Steimel v. Fields*, 1995 WL 530610, at *3 (D. Kan. 1995); *see also Lewis v. Justus,* 2016 WL 1555157, at *4 (S.D. Ill. 4/18/2016) (denying claim that cleaning supplies were limited to a mop and water)). Plaintiff should show good cause why this claim should not be dismissed for failure to state a claim.

### B. Count II

Even if Plaintiff is entitled to tolling for this claim, he fails to state a claim for relief in

Count II.  His claims appear to be based on a statement Reiling made back in 2020.  Plaintiff is seeking to refile a case that he previously filed in this Court in 2020.  *See Jones v. Reiling*, Case No. 20-3068-SAC (D. Kan.)  The previous case was dismissed without prejudice after Plaintiff, a three-strikes litigant, failed to pay the filing fee. *Id*. at Doc. 7.  Plaintiff appealed, and the Tenth Circuit dismissed the appeal when Plaintiff failed to pay the appellate filing fee required based on his three-strikes status.  *Id*. at Doc. 23 (finding Plaintiff was a "prisoner" with three strikes and was therefore required to pay the appellate filing fee in full); Doc. 24 (dismissing appeal).

In denying Plaintiff's motion for reconsideration, this Court found that:

> Plaintiff was a pretrial detainee at the Douglas County Jail at the time he filed this action. He is subject to the provisions of 28 U.S.C. § 1915(g). The initial complaint in this matter involved the denial of legal postage for an out-of-state mailing. Plaintiff claimed that after he protested that decision, defendant Reiling stated he would ask another detainee to take plaintiff into his cell or outside. Plaintiff argued this was a threat of harm and, although he has not been injured, he asserted that he was subject to "future imminent danger." The court found this claim was insufficient to allow him to avoid the bar imposed by § 1915(g) and directed him to submit the $400.00 filing fee on or before April 9, 2020. Plaintiff failed to submit the filing fee as directed, and the court dismissed the matter without prejudice on April 10, 2020.
> On August 18, 2020, plaintiff submitted a motion for reconsideration. Plaintiff claims that he was assaulted in July 2020. He states he was harassed by another prisoner and was moved to medium security. He states that because he had reported the assault, he then was subject to abuse in the medium security area. He also alleges that "due to the domino effect" unnamed inmates split open his eyebrow.

*Id*. at Doc. 12, at 1–2.

Based on the Court's findings in Plaintiff's prior case, it appears tenuous that Reiling's statement to an inmate on January 19, 2020, resulted in Plaintiff's assault in July 2020, by a different inmate.  Plaintiff now suggests that Reiling's January 2020 statement has created a current hostile environment for Plaintiff at the DCJ.

The Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (quoting *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)).   Where "the officers' comments, although inappropriate, do not suggest a show of deadly force," they fail "to create 'terror of instant and unexpected death.'"   *Id*.; *see also McBride v. Deer*, 240 F.3d 1287, at 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citation omitted).

Plaintiff also suggests that the jail should create a confidential system to report issues anonymously.   Plaintiff has failed to show that the current grievance procedure is unconstitutional or that lack of an anonymous system deprives him of his constitutional rights.

Plaintiff has failed to show that his claims from his prior case are timely and has failed to state a claim for a constitutional violation based on his alleged hostile environment.   Plaintiff must show good cause why this matter should not be dismissed as barred by the statute of limitations and for failure to state a claim.

### C.  Count III

As Count III, Plaintiff alleges a First Amendment violation based on court access.   Plaintiff also bases this claim on his alleged issues with Reiling in 2020, stating that the outgoing legal mail issues started with Reiling in January 2020.  (Doc. 13–1, at 7.)  Plaintiff also alleges that there is a delay in outgoing mail and that the jail should be proactive and move to an e-file system.

Even if Plaintiff is entitled to tolling for this claim, he fails to state a claim for relief.  It is well-established that a prison inmate has a constitutional right of access to the courts.  However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . .

. an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff has not alleged that staff at the SCJ prevented him from accessing the courts or caused him actual injury. The claim is not plausible, particularly since he was able to file this action in federal district court as well as the twenty additional cases referenced in Footnote 2. He

merely claims that there was a delay with outgoing mail, and he would prefer to have e-filing as an option.  Nothing suggests that the lack of an e-filing option constitutes a constitutional violation. Plaintiff's claim is subject to dismissal for failure to state a claim.

### D. Count IV

As Count IV, Plaintiff alleges a due process violation, alleging that some unidentified jail policies "prevents knowingly the ability to file writs of habeas have been corrupted by Douglas County Court Staff."  (Doc. 13–1, at 8.)

Plaintiff fails to state a claim for relief.  If he believes his state habeas case was not handled properly by the state court, he should raise his claims in that court.   None of the state court staff are named as defendants in this federal case.

### E. Count V

As Count V, Plaintiff alleges cruel and unusual punishment due to Lt. Carlson's refusal to repaint and power wash "poopy cells in Bravo Unit, and seal up cracks (bugs mites) come in from." *Id*. at 10.  Plaintiff alleges that jail staff responsible for "poop removal" always forget the backs of the doors.  *Id*.  Plaintiff also alleges that he was left in a cell for four days with an unflushed "poopy toilet."  *Id*.  Plaintiff alleges that the Bravo Unit houses mentally ill inmates who should not have to clean their own cells, and that a hazmat crew should be created to clean the cells.  *Id*.

This is basically the same claim he asserts in Count I and is subject to dismissal for the same reasons.  In addition, Lt. Carlson is not a defendant in this case.

### F. Count VI

Plaintiff's claims in Count VI appear to be frivolous.  He fails to name a defendant and fails to otherwise support a First Amendment or due process claim.  He gives no indication as to

why he needs email access to practice his religion.  Plaintiff should show good cause why this claim should not be dismissed as frivolous and for failure to state a claim.

### G.  Unrelated Claims

Rule 20 governs permissive joinder of parties and pertinently provides:

 (2) ***Defendants***.  Persons . . . may be joined in one action as defendants if:
 (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
 (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues."  *Zhu v. Countrywide Realty Co., Inc*., 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees— for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).

It appears that Plaintiff is using his Amended Complaint as a tool to bring in claims that were brought in previous cases before this Court that were dismissed when Plaintiff failed to pay his filing fee due to his three-strikes status. "Plaintiff may not avoid the filing restriction of § 1915(g) by improperly joining two unrelated actions in one pleading and he is entitled to proceed [in forma pauperis] only for an action that satisfies the imminent danger exception." *Dopp v. Jones*, 2014 WL 5795787 *1 (W.D. Okla. Nov. 6, 2014) (citation omitted).

## V. Pending Motions

### 1. Motion to Appoint Counsel (Doc. 5)

Plaintiff seeks appointment of counsel, arguing that he has been unsuccessful in attempting to hire lawyers. (Doc. 5, at 1.) He also argues that he suffers from cognitive decline "exacerbated by Defendants' damages." *Id.*

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543,

547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether

to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*,

926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that

there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461

F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115

(10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the

prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*,

461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

    In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's

claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to

investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).

The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a

colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears

capable of adequately presenting facts and arguments.  The Court denies the motion without

prejudice to refiling the motion if Plaintiff's Amended Complaint survives screening.

### 2.  Motion for Court Order (Doc. 6)

    Plaintiff's Motion for Court Order appears to set forth issues in the state court.  (Doc. 6, at

1.)  He suggests Defendants did not include all the documents, the wrong address was listed for

the Douglas County District Court Clerk, the jail mishandled his legal mail, the county clerk

mishandled his writ of habeas corpus that he filed in his case, and he should be released because

the Defendants did not answer his writ.  *Id*.  Plaintiff asserts that this gives rise to more civil rights

violations by county employees "e.g. court clerk." *Id*.  These allegations are unrelated to Plaintiff's

claims in this case.  If Plaintiff believes his state habeas action was mishandled, he should pursue

relief in the state courts.  The motion is denied.

### 3.  Motion for Status Conference and Case Management (Doc. 7)

Plaintiff's Motion for Status Conference and Case Management  seeks to schedule a status conference and begin discovery.  Plaintiff's Amended Complaint has not passed screening and any request for discovery is premature.  The motion is denied.

### 4.  Motion for Temporary Injunctive Relief (Doc. 8)

In his Motion for Temporary Injunctive Relief, Plaintiff  asks the Court to require the DCJ to use e-filing, to remove Lt. Reiling from the DCJ, and to require the DCJ to create an email app so inmates can anonymously report misconduct and problems.  (Doc. 8, at 1.)  Plaintiff attaches an affidavit claiming that Reiling violated Plaintiff's "rights to not be in a poopy cell, and subjected to a cell of a[n] inmate with HIV/AIDS, that made him sick."  (Doc. 8–1, at 1.)

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries.  One will not be granted against something

merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. Plaintiff's motion is denied.

## VI. Response Required

This case is subject to dismissal. The Court has reviewed the pending motions and finds that they do not warrant relief at this stage of the proceedings. Plaintiff should refrain from filing any motions or pleadings other than his response to this Memorandum and Order to Show Cause. Plaintiff is required to show good cause why his Amended Complaint should not be dismissed for

the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion (Doc. 13) seeking to amend his complaint is **granted**.  The Court grants Plaintiff leave to file his proposed amended complaint and directs the Clerk to file Doc. 13–1 as Plaintiff's Amended Complaint.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 3) is **denied as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (Doc. 5) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Court Order (Doc. 6), Motion for Status Conference and Case Management (Doc. 7), and Motion for Temporary Injunctive Relief (Doc. 8) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **June 5, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated May 5, 2025, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**