IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH LEE JONES,

    **Plaintiff,**

    v.     CASE NO. 25-2175-JWL

DOUGLAS COUNTY BOARD OF
COMMISSIONERS, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this action on September 30, 2024, in the District Court of Douglas County, Kansas, as a "Petition for Damages and Restraining Order." (Doc. 1–1, at 1.) The matter was removed to this Court on April 4, 2025, pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1.) Plaintiff is in custody at the Douglas County Jail in Lawrence, Kansas ("DCJ"). On May 5, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 19) ("MOSC") ordering Plaintiff to show good cause why his Amended Complaint should not be dismissed for the reasons set forth in the MOSC.

The Court's MOSC provides that "Plaintiff should refrain from filing any motions or pleadings other than his response to this Memorandum and Order to Show Cause." (Doc. 19, at 24.) Plaintiff filed additional motions, and the Court entered an Order (Doc. 24) denying the motions and stating that "[t]he Court cautions Plaintiff that he should refrain from filing any motions or pleadings other than his response to the MOSC [and] [a]ny further motions or pleadings filed other than Plaintiff's response may be summarily denied." (Doc. 24, at 2.) Following the Court's Order, Plaintiff has filed seventeen pleadings: four motions (Docs. 25, 30, 37, and 41); a surreply to the denied motion to dismiss (Doc. 29); six responses (Docs. 26, 27, 28, 31, 33, and

1

36); two supplements (Docs. 32 and 34); an "opposition" (Doc. 35); a "Notice of Further Support of Religious Freedoms" (Doc. 38); a Memorandum of Law (Doc. 39); and an Affidavit (Doc. 40).

**I. Plaintiff's Amended Complaint**

Plaintiff alleges as Count I of his Amended Complaint that Chase Reiling's failure to properly clean the back of the cell door constitutes cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 13–1, at 5.) Plaintiff alleges that Reiling was made aware of feces on the back of Plaintiff's cell door. *Id*. Plaintiff alleges that he became ill because of the nasty cell. *Id*. Plaintiff alleges that he made complaints, and staff told him that it was his responsibility to clean his cell. *Id*.

As Count II, Plaintiff reasserts his original claim that Reiling created a hostile environment in violation of the Eighth Amendment. *Id*. He bases this claim on Reiling's statements from 2020 that were the subject of his prior case. Plaintiff alleges that the jail should create a confidential system to report issues anonymously. *Id*.

As Count III, Plaintiff alleges a First Amendment violation based on court access. *Id*. at 7. Plaintiff also bases this claim on his alleged issues with Reiling in 2020. *Id*. ("outgoing legal mail issues started with Reiling in January 2020"). Plaintiff alleges that there is a delay in outgoing mail and that the jail should be proactive and move to an e-file system. *Id*.

As Count IV, Plaintiff alleges a due process violation. *Id*. at 8. Plaintiff alleges that some unidentified jail policies "prevent knowingly the ability to file writs of habeas have been corrupted by Douglas County Court Staff." *Id*. at 8.

As Count V, Plaintiff alleges cruel and unusual punishment due to Lt. Carlson's refusal to repaint and power wash "poopy cells in Bravo Unit, and seal up cracks (bugs mites) come in from." *Id*. at 10. Plaintiff alleges that jail staff responsible for "poop removal" always forget the backs of

the doors. *Id*. Plaintiff also alleges that he was left in a cell for four days with an unflushed "poopy toilet." *Id*. Plaintiff alleges that the Bravo Unit houses mentally ill inmates who should not have to clean their own cells, and that a hazmat crew should be created to clean the cells. *Id*.

As Count VI, he alleges a violation of his First Amendment right to practice his religion and a due process violation. *Id*. at 4. He alleges that Bravo Behavioral Management ("BMU") forbids computer tablets while on BMU. *Id*. Plaintiff alleges that access to his Christian Transhumanist Association ("CTA") email account is only on the tablet. *Id*. He alleges that he is a "Christian Transhumanist" and is "forced to communicate with only Basic Christians about the development of an intelligence amplifier (a microtubule crystal braincell), his own original A.I. design." *Id*. at 6. Plaintiff claims that his emails were hacked and he reported it to the CTA, who were emailing him until his emails "were harmed." *Id*.

The remainder of his allegations are largely incomprehensible. He mentions a proposal for a "SpaceForce Chaplin," a "transhumanist practice," and states that his activities are "internationally emergent." *Id*. at 4. He states that "sub-casted inmates (vetted) are to have their needs met since the law library say [sic] I (transhuman) call the shots." *Id*. He mentions the "forced utilization of [his] services as an independent auditor)." *Id*.

Plaintiff names as defendants: the Douglas County Board of Commissioners; Jay Armbrister, and Chase Reiling. Plaintiff seeks compensatory, punitive, and nominal damages.

## II. Pending Motions

### 1. Motion in Regard to Writ of Habeas Corpus (Doc. 25)

Plaintiff claims that the "writ is way overdue." (Doc. 25, at 1.) Plaintiff then suggests that the entire docket from his state court case was not included in the removal documents.[1] Although

---

[1] The Notice of Removal included the following documents from the state court case: the Petition for Damages and Restraining Order filed September 30, 2024 (Doc. 1–1, at 1–2); the Notice to the Clerk Re: Filing of Suit filed

the Notice of Removal fails to include any documents filed after January 31, 2025, it is not clear that the documents were served on the Defendants. *See* 28 U.S.C. § 1446(a) (requiring notice of removal to include "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."). In any event, nothing in the subsequent pleadings changes the Court's rulings in this case.

Plaintiff claims that an appeal was attempted in 2024-CV-318 and the state court clerk failed to return a file stamped copy of the notice of appeal. Plaintiff seeks "release from jail." (Doc. 25, at 1.) There are additional steps required to perfect an appeal. After a notice of appeal is filed, the party that wishes to appeal—called the appellant— must docket the appeal with the appropriate appellate court. Kansas Supreme Court Rule 2.04(a)(1), which is titled "Docketing an Appeal," states that "[n]o later than 60 days after a notice of appeal is filed in a district court, *the appellant* must complete or obtain and file with the clerk of the appellate courts" certain documents, including the notice of appeal. Kan. S. Ct. R. 2.04(a)(1) (emphasis added). Thus, the burden to docket the appeal by providing the necessary documents to the Kansas appellate courts belongs to Plaintiff. Nothing before this Court indicates that he has docketed an appeal with the clerk of the appellate courts or that this Court should take any action regarding his notice of appeal.

Plaintiff is confused as to what happened to his writ for habeas corpus that he filed in his

---

September 30, 2024 (*Id*. at 3); the Summons filed September 30, 2024 (*Id*. at 4); the "Motion to Correct Caption Motion to Supplement Pleading" filed October 3, 2024 (*Id*. at 5–6); the "Motion to Supplement Pleading in Support of Motion for Preliminary Injunctive Relief" filed October 3, 2024 (*Id*. at 7); a Certificate of Service filed October 29, 2024 (*Id*. at 8–9); a document titled "In Support of Temporary Relief" filed October 29, 2024 (*Id*. at 10–12); a notice to the clerk indicating that Plaintiff needs to file "this writ" and requesting the required forms, filed November 19, 2024 (*Id*. at 13–14); Order Regarding Waiver of Filing Fees filed November 19, 2024 (*Id*. at 15); Poverty Affidavit filed November 19, 2024 (*Id*. at 16); Writ of Habeas Corpus filed November 19, 2024 (*Id*. at 17–18); a document referencing K.S.A. 60-1501, a "Handmade Summons," and a copies of grievances and disciplinary records filed November 27, 2024 (*Id*. at 19–25); a Motion to Compel Answer or Grant Release filed December 31, 2024 (*Id*. at 26); a Motion for Default, Affidavit, and copy of a grievance filed January 31, 2025 (*Id*. at 27–29); and a Motion for Default Judgment filed January 31, 2025 (*Id*. at 30).

state court case.  He claims that it was never answered in Case No. 23-CR-356, and the state court's reference to Case No. 24-CV-57 is confusing because it is not Plaintiff's case.  (Doc. 25, at 2.) Plaintiff attaches his motion to compel an answer and motions for default judgment that were filed in his state court Case No. 24-CV-318 before it was removed to this Court.  *Id*. at 3–7.

Plaintiff has also expressed concerns in his filings, claiming that all of the filings in Case No. 24-CV-318 were not included in the documents submitted with the Notice of Removal, removing the case to this Court.  *See, e.g.,* Doc. 28.  He claims that this was an "attempt to thwart" his motion for default judgment on his writ of habeas corpus.  *Id*.  He asks this Court to consider his motions for default on his writ of habeas corpus that were filed prior to the removal of this case.  (Doc. 34, at 2.)  He claims that the writ is now part of this case, defendants defaulted, and he should be released.  (Doc. 40, at 2.)

Plaintiff argues that despite filing an Amended Complaint, his habeas action under K.S.A. 60-1501 should still remain pending.  (Doc. 31, at 5.) Plaintiff argues that this Court can address the habeas claim because "state statutes can be litigated also in Federal court with the civil rights claims at the same time." *Id*. at 7.

The Court notes that Plaintiff's writ was filed in Case No. 2024-CV-318 prior to its removal to this Court.  However, the docket also reflects correspondence from the state court judge presiding over Case No. 2024-CV-318 to the judge presiding over Plaintiff's criminal case (Case No. 2023-CR-356).  The correspondence indicates that the issues discussed in the habeas motion appear to relate to Plaintiff's criminal case and that Plaintiff may have intended to file it in his criminal case.  The correspondence then notes that there is a probation violation hearing scheduled for March 19, 2025, in Plaintiff's criminal case, and the judge asks the judge in the criminal case to inquire of Plaintiff as to whether he in fact intended to file a new habeas case, whether it was

5

intended to be filed in his criminal case, or whether it was intended to be filed in Plaintiff's civil case. The Court sympathizes with Plaintiff's confusion, because the correspondence references Plaintiff's civil case as Case No. 2024-CV-57 instead of Case No. 2024-CV-318. Despite this confusion, it is clear the issue is to be clarified at the probation violation hearing. Although the hearing was scheduled for March 19, 2025, online district court records for Case No. 2023-CR-356 show that the hearing was continued to July 16, 2025. Plaintiff should address his motion seeking habeas relief at that hearing.

Although Plaintiff would like this Court to address the writ he filed prior to removal and to grant a default judgment, such relief would be improper in this case. Plaintiff believes that his habeas claims can be addressed in this civil rights action and that he is entitled to immediate release. "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*" *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added). When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982).

Plaintiff should address his request for habeas relief at his probation violation hearing or file a separate habeas action. Plaintiff's motion is denied.

### 2. Motion for Extension of Time (Doc. 30)

Plaintiff has filed a motion seeking additional time to respond to the MOSC. Plaintiff has already filed six responses, as well as multiple supplements and other pleadings, even though he was cautioned to file only one response. Therefore, any request for additional time to submit another response is denied.

### 3. Motions to Supplement (Docs. 37, 41)

Plaintiff has filed a motion to supplement and "join new counts." (Doc. 37, at 1.) Plaintiff alleges that Defendant Reiling made a joke about Plaintiff's height when Plaintiff was being moved and couldn't reach a cup that was left behind. *Id.*; *see also* Doc. 34, at 3; Doc. 36, at 4. Plaintiff alleges that the ridicule by Reiling causes hives and welts on Plaintiff's face. (Doc. 37, at 2.) Plaintiff alleges that Lt. Carlson "is now for sure a named defendant." *Id.* at 1, Plaintiff alleges that Lt. Hardy waited 24 hours to forward a grievance appeal. *Id.* at 2. Plaintiff seeks to add a Count VII based on Reiling's comments. *Id.* Plaintiff also claims that further exhaustion is not possible because he would risk punishment. *Id.* at 3.

Nothing in Plaintiff's motion states a valid claim for relief. As the Court found in the MOSC, the Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (quoting *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)). Where "the officers' comments, although inappropriate, do not suggest a show of deadly force," they fail "to create 'terror of instant and unexpected death.'" *Id.*; *see also McBride v. Deer*, 240 F.3d 1287, at 1291 n.3 (10th Cir. 2001)

("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.") (citation omitted). The motion to supplement is denied.

Plaintiff filed a second motion to supplement (Doc. 41), seeking to add Captain Johnson as a defendant based on Johnson's handling of Plaintiff's grievances. Plaintiff's motion seeking to add Johnson as a defendant and to add a claim regarding the handling of his grievances is denied. Plaintiff acknowledges that a grievance procedure is in place and that he used it. Plaintiff's claims relate to his dissatisfaction with responses to his grievances or the processing of his grievances. The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Plaintiff's motion is denied.

**4. Additional Pleadings**

Plaintiff also filed a Reply to Response to Motion to Amend (Doc. 28). This document filed by Plaintiff appears to be a reply to the Defendants' response in opposition to Plaintiff's motion to amend his complaint. The Court granted Plaintiff's motion to amend and filed his

8

Amended Complaint on May 5, 2025. *See* Docs. 19 and 20. Therefore, the Court will not be addressing this "reply" that was filed after the Court had already granted the motion to amend.

Plaintiff also filed an additional response in opposition to the Defendants' motion to dismiss (Doc. 29). The Court denied the motion to dismiss on May 5, 2025. *See* Doc. 19. Therefore, the Court will not be taking any action on the response that was filed after the Court had already denied the motion to dismiss.

### III.  Discussion

#### 1.  Statute of Limitations - Counts II and III

The Court found in the MOSC that Counts II and III were barred by the statute of limitations. As Count II, Plaintiff reasserts his original claim that Reiling created a hostile environment in violation of the Eighth Amendment. He bases this claim on Reiling's statements in 2020. As Count III, Plaintiff alleges a First Amendment violation based on court access. Plaintiff also bases this claim on his alleged issues with Reiling in 2020.

The Court found that it plainly appears from the face of the Amended Complaint that Plaintiff's claims are subject to dismissal as barred by the applicable two-year statute of limitations. Plaintiff filed his original action on March 4, 2020, based on events occurring in January 2020. *See Jones v. Reiling*, Case No. 20-3068, at Doc. 1 (D. Kan.). Plaintiff refers to the instant case as a "delayed refiling." (Doc. 1–1.) Plaintiff initiated the instant case on September 30, 2024, in state court. It thus appears that any events or acts of Defendant Reiling taken in connection with Plaintiff's claims took place more than two years prior to the filing of Plaintiff's complaint and are time-barred. *See Fratus v. Deland*, 49 F.3d 673, 674–75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).

Plaintiff argued that he is entitled to tolling based on Covid-19, exhaustion, and mental incompetency. The Court found that although the Kansas Supreme Court tolled the state statutes of limitations in response to the COVID-19 pandemic, it does not save Plaintiff's claims in this case. *See Korgan v. Estate of Hansen by and through Cramer*, 2022 WL 4465074, at *2–4 (D. Kan. Sept. 26, 2022) (finding that the statute of limitations was tolled from March 19, 2020 through April 14, 2021). The tolling or suspension is set forth in Kansas Supreme Court ("KSC") Administrative Order 2020-PR-016, as amended by KSC Administrative Order 2020-PR-32. KSC Administrative Order 2021-PR-020 reinstated the statute of limitations effective April 15, 2021, and instructs that "for a deadline or time limitation that did not begin to run'" because of the earlier suspension, "'a person shall have the full period provided by law to comply with the deadline or time limitation.'" *See id.* The AO reinstated the statute of limitations effective April 15, 2021. Even if the statute had not run prior to the tolling, Plaintiff would have had two years from April 15, 2021, to initiate his case. Even considering the KSC's suspension or tolling, Plaintiff's claims are still untimely.

Plaintiff suggested that tolling should apply due to exhaustion, without explanation. The Court found that Plaintiff was required to exhaust prior to filing his initial case in March 2020, so any time exhausting would not help him in this case. The Court also found that the record fails to support a claim that Defendants affirmatively induced Plaintiff into delaying his filing of this suit or that some "extraordinary circumstances" prevented the timely filing. *Dartez v. Peters*, Case No. 15-3255-EFM-DJW, 2018 WL 1138282, at *6 (D. Kan. March 2, 2018) (citation omitted). Neither pro se status nor a misunderstanding of law and legal procedure are sufficient to establish extraordinary circumstances. "[I]t is well established that ignorance of the law, even for an incarcerated pro se [plaintiff], generally does not excuse prompt filing." *Caballero*, 789 F. App'x

10

at 687 (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (internal quotation marks omitted); *see also McClain*, 2013 WL 3970215, at *3 ("[I]gnorance of the law doesn't entitle a person to equitable tolling of the limitations period.")). Plaintiff does not demonstrate any extraordinary circumstance that would entitle him to equitable tolling of the limitation period.

Plaintiff also suggests that the limitations period should be tolled due to "mental incompetency and boughts [sic] of cognitive decline." (Doc. 13.) The Court found that Plaintiff failed to provide factual support for his claim that the statute of limitations should be tolled based on "mental incompetency and boughts [sic] of cognitive decline." *See Eden v. Webb*, 2022 WL 621317, at *2 (D. Kan. 2022) ("The problem with Plaintiff's tolling argument is that his allegations do not demonstrate that he was legally incapacitated."). The Court found that Plaintiff bears the burden of establishing a factual basis for tolling, and noting that Plaintiff was able to file the 2020 case, the instant case, as well as 19 other cases that he filed around and in between those two cases.[2] Any bouts of cognitive decline during that period did not prevent him from filing 21 cases during that timeframe.

---

[2] *See Jones v. Douglas Cty. Jail*, Case No. 20-3056-SAC (D. Kan. filed 2/18/20); *Jones v. Armbrister*, Case No. 24-3156-JWL (D. Kan. filed 9/10/24); *Jones v. Armbrister*, Case No. 24-3172-JWL (D. Kan. filed 9/30/24); *Jones v. Armbrister*, Case No. 24-3216-JWL (D. Kan. filed 12/2/24); *Jones v. Douglas Cty, Bd. of Comm'rs*, Case No. 20-2363-SAC (D. Kan. removed on 7/24/20); *Jones v. Douglas Cty. Sheriff's Office*, Case No. 20-2520-SAC (D. Kan. removed on 10/21/20); *Jones v. Douglas Cty. Sheriff's Office*, Case No. 20-2522-SAC (D. Kan. removed 10/21/20); *Jones v. Loomis*, Case No. 20-3020-SAC (D. Kan. filed 1/15/2020); *Jones v. Douglas Cty. Bd. of Cty. Comm'rs*, Case No. 20-3064-SAC (D. Kan. filed 2/25/2020); *Jones v. Douglas Cty. Jail*, Case No. 20-3091-SAC (D. Kan. filed 3/25/20); *Jones v. Crow*, Case No. 20-3177-HLT (D. Kan. filed 7/01/20); *Jones v. Bureau of Prisons*, Case No. 21-3058-SAC (D. Kan. filed 2/26/21); *Jones v. Patents and Trademarks Comm'r*, Case No. 21-4021-KHV-ADM (D. Kan. filed 4/8/21); *Jones v. Cole*, Case No. 24-3147-JWL (D. Kan. filed 8/26/24); *Jones v. (lnu)*, Case No. 24-3158-JWL (D. Kan. filed 9/12/24); *Jones v. Armbrister*, 24-3209-JWL (D. Kan. filed 11/20/24); *Jones v. United States Patent and Trademark Office*, Case No. 25-3070-JWL (D. Kan. filed 4/21/25); *Jones v. Google LLC*, Case No. 20-3072-SAC (D. Kan. filed 3/6/20); *Jones v. Comm'r of Social Security Adm.*, Case No. 20-4008-JAR (D. Kan. filed 1/27/20); *Jones v. Comm'r of Social Security Admin.*, Case No. 20-4023-JWB (D. Kan. filed 5/7/20); and *Jones v. Comm'r Social Security Admin.*, Case No. 20-4031-JWL (D. Kan. filed 3/31/25)

Plaintiff argues for tolling in his responses. Plaintiff responds by again mentioning the tolling of the statute of limitations due to Covid. (Doc. 26, at 1; Doc. 27, at 1; Doc. 29, at 1.) As set forth above, tolling due to Covid does not save his claims.

Plaintiff also cites K.S.A. 22-3402(m) as support for his argument that state court actions were stayed. (Doc. 27, at 1.) That section provides that:

> No time between March 19, 2020, and March 1, 2024, shall be assessed against the state for any reason. Any person arraigned before March 1, 2024, shall be deemed to have been arraigned on March 1, 2024, for the application of the time limitations provided in subsection (a), (b) or (c).

K.S.A. 22-3402(m). This statute deals with speedy trials in criminal cases. Plaintiff claims that he was unsure as to whether or not his legal mail was being delivered to the "Kansas Judicial Law Library" when he was requesting documents showing the stays for speedy trials. (Doc. 26, at 1–3.) Then Plaintiff references a possible criminal trial for Chance Reiling, acknowledges that one has not been brought, then suggests he would need to wait for any possible criminal trial to conclude before bringing his civil action against Reiling. (Doc. 27, at 1.) He believes this argument renders his current civil action timely-filed. *Id.* He claims the District Attorney's refusal to respond to Plaintiff's request to file criminal charges "administratively" tolls the statute of limitations for this case. (Doc. 29, at 1–2.) He argues that his statute of limitations is tolled until he receives a final answer from the District Attorney regarding whether or not they are bringing criminal charges. (Doc. 30, at 3; Doc. 31, at 1.) He argues that he had to wait for an answer from the District Attorney because Reiling cannot be tried twice on the same facts. (Doc. 31, at 1.) Plaintiff also argues that he could not have brought his claims back in 2020 because other witnesses would have been scared and threatened. (Doc. 33, at 5.) Plaintiff's arguments are without merit.

He has provided no authority to suggest that his civil action was tolled until he received a final answer from the District Attorney or that somehow his civil claim may constitute double jeopardy.

Plaintiff has failed to show good cause why his claims in Counts II and III are not barred by the statute of limitations. In addition, the Court found that Plaintiff also failed to state a claim for relief in those counts.

### 2. Count I

Plaintiff alleges as Count I of his Amended Complaint that Reiling's failure to properly clean the back of the cell door constitutes cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff alleges that Reiling was made aware of feces on the back of Plaintiff's cell door. Plaintiff alleges that he became ill because of the nasty cell, and that he made a complaint and staff told him that it was his responsibility to clean his cell.

The Court noted that Plaintiff brought this same claim in one of his prior cases. *See Jones v. Armbrister*, Case No. 24-3209-JWL, Doc. 7 (D. Kan.). In that case, he claimed that Lt. Carlson is the one that stated that the cells were clean, but failed to check them herself. *Id*. at Doc. 7, at 3. Plaintiff stated that after he made several complaints, they attempted to clean one door, and the other two cells were cleaned after two weeks. *Id*. at 3–4. Plaintiff claimed that he was stuck in a cell with "poop all over the door for 2 weeks." *Id*. at 4.

The Court found that Plaintiff failed to state a claim based on the conditions of his cell. A delay by staff in cleaning his cell or them requiring him to clean his own cell does not show deliberate indifference or a sufficiently serious condition. Nothing suggests that staff are deliberately indifferent by providing cleaning supplies to inmates to allow them to clean their own cells. *See Dykes v. Benson*, 2022 WL 19076614, at *6 (6th Cir. 2022) (finding no Eighth Amendment violation where Dykes was placed in a filthy cell and was provided with cleaning

supplies three days later, stating that "temporary exposure to unsanitary conditions does not amount to an Eighth Amendment violation") (citation omitted); *see also Schmitt v. United States*, 2018 WL 4102517, at *4 (S.D. Miss. 2018) (noting situations where courts have concluded that inmates failed to state a constitutional claim based on filthy and/or flooded cells) (citing *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998) (no constitutional violation where prisoner alleged he was housed for three days in a filthy cell and was provided cleaning supplies); *Smith v. Copeland*, 87 F.3d 265, 268–69 (8th Cir. 1996) (prisoner housed for four days in cell with raw sewage from overflowing toilet failed to state Eighth Amendment claim); *Geagan v. Couvillon*, 2018 WL 1750954, at *4 (W.D. La. Mar. 22, 2018) (no violation where prisoner complained of two incidents where toilet overflowed causing feces, urine, and other foreign objects to flood the tier); *Compare McCord v. Maggio*, 927 F.2d 844, 846 (5th Cir. 1991) (inmate repeatedly having to sleep and live in raw sewage and foul water constituted cruel and unusual punishment)).

Plaintiff's claims in his previous case suggest that Plaintiff's situation was temporary—two weeks or less. Plaintiff acknowledges in his response that eventually he was moved to a clean cell. (Doc. 30, at 2.) Although Plaintiff does not want to clean his own cell and would prefer to have staff power wash the cell, he has failed to show deliberate indifference. *See Waterman v. Cherokee Cty. Jail*, 2018 WL 3609751, at *2 (D. Kan. 2018) ("plaintiff does not have a constitutional right to a particular amount or type of cleaning supplies, such as gloves) (citing *Steimel v. Fields*, 1995 WL 530610, at *3 (D. Kan. 1995); *see also Lewis v. Justus,* 2016 WL 1555157, at *4 (S.D. Ill. 4/18/2016) (denying claim that cleaning supplies were limited to a mop and water)). Plaintiff has failed to show good cause why this claim should not be dismissed for failure to state a claim.

3. Count III

As Count III, Plaintiff alleges a First Amendment violation based on court access. Plaintiff also bases this claim on his alleged issues with Reiling in 2020, stating that the outgoing legal mail issues started with Reiling in January 2020. (Doc. 13–1, at 7.) Plaintiff also alleges that there is a delay in outgoing mail and that the jail should be proactive and move to an e-file system.

The Court found in the MOSC that even if Plaintiff is entitled to tolling for this claim, he fails to state a claim for relief. It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is

15

simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff has not alleged that staff at the SCJ prevented him from accessing the courts or caused him actual injury. The claim is not plausible, particularly since he was able to file this action in federal district court as well as the twenty additional cases referenced in Footnote 2.[3] He has also filed 17 pleadings in this case since the Court entered the MOSC. He merely claims that there was a delay with outgoing mail, and he would prefer to have e-filing as an option. Nothing suggests that the lack of an e-filing option constitutes a constitutional violation.

In his response, Plaintiff argues that he is unsure as to whether or not his outgoing legal mail is just being delivered late, or not at all. (Doc. 31, at 4.) Plaintiff indicates that his requests for copies of the docket in Case No. 2024-CV-318 are either not being received or they are not responding to his requests. *Id*. He also states that his writ has not been answered and defendants are in default. *Id*.

Plaintiff also alleges that his appeal to the Tenth Circuit "never made it," referencing a ruling in Case No. 24-3182. (Doc. 33, at 7.) Plaintiff filed an appeal in Case No. 24-3172, and the Tenth Circuit denied Plaintiff a certificate of appealability. *See Jones v. Armbrister*, Case No. 24-3182, Doc. 11–1 (10th Cir. Jan. 27, 2025). It is unclear what Plaintiff is claiming "never

---

[3] It also appears that Plaintiff has filed two additional actions in state court that remain pending. Plaintiff filed state case DG-2025-CV-000200 on April 29, 2025, against the Douglas County Commissioners regarding copies and grievances at the DCJ, and he filed Case No. DG-2025-CV-000116 on March 14, 2025, against the Lawrence Journal World regarding its refusal to sell him space.

16

made it," because he appealed and the Tenth Circuit issued an opinion denying a COA, finding that Plaintiff raised unrelated arguments and failed to assert arguments regarding the dismissal of his habeas petition and none of his arguments "address the validity of his original petitions nor the soundness of the district court's dismissal." *Id*. at 4–5. Clearly Plaintiff's appeal made it to the Tenth Circuit. He was ordered to resubmit a signed notice of appeal, and that amended notice of appeal also made it to the Tenth Circuit. *See Jones v. Armbrister*, Case No. 24-3172, at Doc. 12, 16 (D. Kan.). Plaintiff has failed to show good cause why any claim based on legal mail should not be denied for failure to state a claim.

### 4. Count IV

As Count IV, Plaintiff alleges a due process violation, alleging that some unidentified jail policies "prevents knowingly the ability to file writs of habeas have been corrupted by Douglas County Court Staff." (Doc. 13–1, at 8.) The Court found that Plaintiff fails to state a claim for relief. As set forth above, the writ is being addressed by the state court.

### 5. Count V

As Count V, Plaintiff alleges cruel and unusual punishment due to Lt. Carlson's refusal to repaint and power wash "poopy cells in Bravo Unit, and seal up cracks (bugs mites) come in from." *Id*. at 10. Plaintiff alleges that jail staff responsible for "poop removal" always forget the backs of the doors. *Id*. Plaintiff also alleges that he was left in a cell for four days with an unflushed "poopy toilet." *Id*. Plaintiff alleges that the Bravo Unit houses mentally ill inmates who should not have to clean their own cells, and that a hazmat crew should be created to clean the cells. *Id*.

The Court found that this is basically the same claim he asserts in Count I and is subject to dismissal for the same reasons. In addition, Lt. Carlson is not a defendant in this case.

**6. Count VI**

The Court found that Plaintiff's claims in Count VI appear to be frivolous, finding that he fails to name a defendant; fails to otherwise support a First Amendment or due process claim; and he gives no indication as to why he needs email access to practice his religion.

In his response, Plaintiff acknowledges that he received one Transhumanism book, but any request for a second book was limited to a Bible. (Doc. 33, at 12; Doc. 35, at 1.) Plaintiff continues to argue that he is not allowed to call the CTA or use his email account created by the CTA. (Doc. 33, at 12.) He claims he needs email access to communicate with the CTA, and notes that Transhumanists are rare. *Id*. at 13. He claims that because he is a "religious leader," he has different needs in the practice of his religion. *Id*. He claims he is both Christian and Transhumanist. *Id*. He claims he needs access to a tablet to "collaborate on the creation of the virtual kingdom." *Id*. at 14. Plaintiff argues that the DCJ contacted the CTA to find out what Plaintiff needs to practice his religion. (Doc. 35, at 1.) Plaintiff takes issue with this because Plaintiff "calls the shots" because he was the first person to go to the State of Kansas to start the Church of Christian Transhumanism of Kansas. *Id*. He argues that the jail has to supply whatever he says his religion dictates. *Id*. at 2. He claims he is "an accredited independent/freelancer with right [of] affiliation" with the CTA.[4] *Id*.

"To state a valid constitutional claim, a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief." *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). "If a substantial

---

[4] Plaintiff also filed a notice in support of religious freedoms. (Doc. 38.) The document is frivolous and largely incomprehensible. Plaintiff also filed a document with the case number for this case but with the case name of *Jones v. SSA*. (Doc. 39.) It deals with social security benefits and appears to have been filed in the wrong case. Plaintiff does have a pending case against the SSA—*Jones v. SSA*, Case No. 25-4031-JWL. The Court will direct the Clerk to refile Doc. 39 in Case No. 25-4031.

burden is shown, officials must identify a legitimate penological interest." *Williams*, 5 F.4th at 1133 (citing *Kay*, 500 F.3d at 1218).

Our Circuit has articulated the following test to determine when the government places a substantial burden on a plaintiff's free exercise of religion:

> The government substantially burdens a person's religions exercise ... when it (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief."

*Blair v. Raemisch*, 804 F. App'x 909, 916–17 (10th Cir. 2020) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)).

Plaintiff's argument that he is the leader of his religion and therefore can dictate what he needs to practice is without merit. Plaintiff provides no legal authority to support this claim. The DCJ reached out to the CTA to determine what Plaintiff needed and provided him with a book. Plaintiff has failed to show a substantial burden on his right to freely practice his religion.

### 7. Unrelated Claims

The Court found in the MOSC that it appears that Plaintiff is using his Amended Complaint as a tool to bring in claims that were brought in previous cases before this Court that were dismissed when Plaintiff failed to pay his filing fee due to his three-strikes status. "Plaintiff may not avoid the filing restriction of § 1915(g) by improperly joining two unrelated actions in one pleading and he is entitled to proceed [in forma pauperis] only for an action that satisfies the imminent danger exception." *Dopp v. Jones*, 2014 WL 5795787 *1 (W.D. Okla. Nov. 6, 2014) (citation omitted). Plaintiff should adhere to these rules in filing any future cases.

The Court also notes that Plaintiff filed seventeen pleadings despite being advised in two separate orders that he should refrain from filing anything other than a response to the MOSC. If Plaintiff continues to disregard orders or to submit abusive filings, the Court may consider filing restrictions.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motions (Docs. 25, 30, 37, and 41) are **denied.**

**IT IS FURTHER ORDERED** that Clerk is directed to refile Doc. 39 in Case No. 25-4031.

**IT IS FURTHER ORDERED** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

Dated June 6, 2025, in Kansas City, Kansas.

S/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**